IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| SHELLEY GIPSON, § | |
| § | |
| PLAINTIFF, § | |
| § | |
| VS. § | CA No. 4:22-cv-00730-P |
| § | |
| WEATHERFORD COLLEGE OF THE PARKER § | |
| COUNTY JUNIOR COLLEGE DISTRICT, § | |
| § | |
| DEFENDANT. § | |

## INTRODUCTION

Plaintiff contends she only needs (and is entitled to) answers to the following two questions from Ralinda Stone, former Executive Director of Human Resources for the college. ECF 60, pp. 9-10:

[W]ith regard to Ms. Stone, Plaintiff only seeks to learn:

(1) If Ms. Stone was ordered or instructed by Mr. Curlee to not conduct an investigation into Plaintiff's internal complaint of harassment; and

(2) If Mr. Curlee told Ms. Stone that he would notify Dr. Farmer that Plaintiff had submitted an internal complaint of harassment.

Additionally, Plaintiff claims she needs (and is entitled to) answers to the following two questions from the General Counsel, Dan Curlee. *Id.*, p. 10:

[W]ith regard to Dan Curlee's deposition, Plaintiff only seeks to learn:

(1) If Mr. Curlee ordered or instructed Ms. Stone to not conduct an investigation into Plaintiff's internal complaint of harassment; and

(2) If Mr. Curlee notified Dr. Farmer (the alleged harasser) that Plaintiff had submitted an internal complaint of harassment against him and, if so, when.

The latter question is answered by Mr. Curlee's supplemental *Declaration*, being concurrently filed with this *Reply*. ECF 73-1, p. 4. *Mr. Curlee had no conversations whatsoever with Dr. Farmer concerning Plaintiff's complaints to*

1

*Stone or Finley before the college received notice of Plaintiff's EEOC Charge from the EEOC on January 31, 2022. Period.* Thus, there is no need to depose the General Counsel in order to obtain the answer to that question.

The remaining three questions specifically seek disclosure of privileged communications during the March 4, 2021, specially called, closed-door meeting of Stone and Adam Finley, then Executive Dean of Students with the college and Title IX Compliance Officer, with the college's General Counsel. Communications between Finley, Stone, and the General Counsel during the meeting are, as a matter of law, privileged attorney client communications of the college and Plaintiff has failed to establish any waiver of the privilege. Good cause exists for issuance of a protective order to preclude Plaintiff's persistent efforts—both through depositions and through *ex parte* communications with Stone or other former college employees—to seek privileged information.

**ARGUMENT**

**I.**

**BY PLAINTIFF'S OWN ADMISSIONS, THE DISCOVERY PLAINTIFF SEEKS IS IRRELEVANT AND NOT REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ANY EVIDENCE.**

Plaintiff argues that she should be entitled to discovery of communications during the specially called, closed-door meeting on March 4, 2021, between the General Counsel of the college and two senior administrative officials because—according to Plaintiff—any privilege attaching to the communications has been waived by Defendant's inclusion of the *Ellerth-Faragher*[1] affirmative defense in its *Amended Answer* (ECF 12, p. 15 *Sixth Affirmative Defense*). ECF 60 (pp. 13-

---

[1] *See Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998); *Burlington Indust., Inc. v. Ellerth*, 524 U.S. 742 (1998).

**2**

15). That argument is foreclosed because Plaintiff's admissions in her own prior filings make the *Ellerth-Faragher* affirmative defense wholly irrelevant.

The *Ellerth-Faragher* defense is relevant, if at all, *only* to a claim of hostile environment sexual harassment. *See, e.g.*, *Casiano v. AT&T*, 213 F.3d 278, 283-84 (5th Cir. 2000) (explaining the "*Ellerth/Faragher* road map"). However, in this case, Plaintiff has expressly *disavowed* that she is making a claim of hostile environment sexual harassment. Rather, Plaintiff has expressly limited her claim to one of alleged *quid pro quo* sexual harassment. ECF 53 (p. 1: "Plaintiff's claim for sexual harassment . . . is based on *quid pro quo* harassment (*rather than hostile work environment*)[.]" (emphasis added)); ECF 54 (p. 12: "Plaintiff is pursuing a claim for quid pro quo harassment[.]").

## II.

### COMMUNICATIONS DURING THE MARCH 4, 2021, CLOSED-DOOR MEETING ARE, AS A MATTER OF LAW PRIVILEGED ATTORNEY-CLIENT COMMUNICATIONS.

#### A. THE COMMUNICATIONS ARE CLEARLY PRIVILEGED:

"For a communication to be protected under the privilege, the proponent 'must prove: (1) that he made a confidential communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding.'" *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017) (quoting *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997). As a matter of law, Defendant has established each of these elements regarding communications during the March 4, 2021, meeting.

First, the meeting was clearly confidential. It was a private, closed-door meeting between Finley, Stone, and the General Counsel.

Second, the communications were between two senior administrative

3

officials of the college and the college's General Counsel.

Third, seeking the General Counsel's advice, legal opinion(s), and assistance regarding the information which had been provided to Finley and Stone by Plaintiff and the appropriate course of action, if any, to take based upon that information and applicable law and college policies, was not only the *primary* purpose of the meeting, it was the *sole* purpose. ECF 73-1, pp. 1-4. The advice and opinion(s) expressed by the General Counsel in the meeting involved analysis and application of law, *e.g.*, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000-e, *et seq.*, and Title IX of the Education Amendments of 1972, as amended, 20 U.S.C. § 1681, and the college's policies and procedures to the facts presented. *Id.*, pp. 3.[2, 3] *See, e.g.*, *Scoggins v. Floyd Healthcare Mgmt.*, 2016 WL 11544904, at 3 (N.D. Ga. Mar. 28, 2016) ("Nothing indicates that the primary purpose of the communications at issue was not legal advice.").

---

[2] Nevertheless, Plaintiff contends the three remaining questions to which she claims to need answers from Finley and Stone do "not implicate attorney client privilege." ECF 60, pp. 9-10. However, Plaintiff fails to explain how communications during the meeting "do not implicate attorney client privilege"—clearly they do. Each of the questions to which Plaintiff seeks answers expressly seek disclosure of communications between Finley and Stone with the General counsel during the meeting. Plaintiff cites no authority for the proposition that the questions "do not implicate attorney client privilege."

[3] Plaintiff also contends that communications during the meeting are not privileged simply because the General Counsel was administratively Stone's supervisor. Plaintiff cites no authority to support the proposition that an otherwise privileged communication somehow loses its privileged character whenever there is a superior-subordinate relationship between a lawyer and the person seeking legal advice. Moreover, the contention is irrational. Under Plaintiff's theory, no communication between a lawyer and the attorney's legal assistant would be privileged because the attorney was the legal assistant's supervisor.

4

**B. THE CASES ON WHICH PLAINTIFF RELIES ARE INAPPOSITE:**

In support of Plaintiff's contention the communications between Finley, Stone, and the General Counsel on March 4, 2021, are not privileged, Plaintiff relies upon two cases which are inapposite. Indeed, one of the cases *supports* the conclusion that the communications were privileged.

Initially, Plaintiff claims "[m]erely including an attorney as a recipient on a communication or inviting an attorney to a meeting does not necessarily make that communication privileged," citing *In re Cent. Gulf Lines*, 2000 WL 1793395, at 1 (E.D. La. Dec. 4, 2000); *Nedlog Co. v. ARA Servs., Inc.*, 131 F.R.D. 116, 117 (N.D. Ill. 1989). ECF 60, pp. 7-8. Both cases are inapposite.

- First, the issue raised in Defendant's motion does not involve any written communication whatsoever, much less one "merely copied" to the General Counsel. The question involved in both cases cited by Plaintiff was the application of privilege to *documents*, an issue not relevant to Defendant's motion.

- Second, Curlee was not merely "invited" to "attend" a meeting. Rather, the closed-door, *private, confidential* meeting was *specifically requested* by Finley and Stone *with* Curlee, in Curlee's office. Moreover, neither case cited by Plaintiff supports Plaintiff's assertion that "merely . . . inviting an attorney to a meeting does not necessarily make that communication privileged." The words "meet" or "meeting" do not even appear in either case.

- Third, in fact, the only relevant portion of *In re Cent. Gulf Lines*, 2000 WL 1793395, at 1 states: "The general rule is that communications made by employees to corporate counsel, including in-house counsel, for the purpose of counsel rendering legal advice to the corporation, are protected by the attorney-client privilege."

**III.**

**PLAINTIFF HAS FAILED TO ESTABLISH ANY WAIVER OF THE PRIVILEGE ATTACHING TO THE COMMUNICATIONS AT THE MARCH 4 MEETING.**

As suspected, Plaintiff contends that the college has waived the privilege attaching to the communications during the March meeting by asserting the

5

*Ellerth-Faragher* affirmative defense. ECF 60, pp. 13-15. *None* of the cases cited by Plaintiff (*id.*, p. 14) support that proposition. Indeed, *each* of the cases cited by Plaintiff was decided *before Ellerth and Faragher were even decided* by the Supreme Court in 1998.

Plaintiff's *Response* fails to address *any* of Defendant's arguments for why there has been no waiver by assertion of the *Ellerth-Faragher* defense, or any of the cases cited in Defendant's brief, *i.e.*:[4]

- ➢ No waiver occurs unless the employer *relies on an internal investigation as a part of its defense. See, e.g., Ambrose-Frazier v. Herzing Inc.*, 2016 WL 890406, at 5 & n. 53 (E.D. La. Mar. 9, 2016).

- ➢ The college is *not* relying for its defense on any internal investigation. Rather, the defense is grounded on (1) the existence of the college's anti-discrimination/harassment policies; (2) dissemination of those policies to Plaintiff when hired; and (3) Plaintiff's unreasonable failure to "take advantage of the opportunities provided by the [college and] avoid harm otherwise," by making a prompt complaint of the alleged harassment. *Faragher*, 524 U.S. at 778, 806.[5]

- ➢ No waiver occurs unless counsel is actively participating in or personally conducting the investigation. *See e.g. McKenna v. Nestle Purina PetCare Co.*, 2007 WL 433291 (S.D. Oh. Feb. 5, 2007) (the attorneys "did not personally engage in the investigation, conduct interviews, or make decisions" or "otherwise participate in the investigation itself").

- ➢ Even where a waiver of any sort occurs as a result of assertion of the

---

[4] Moreover, as explained *supra*, the defense is only applicable in the face of a claim of hostile environment sexual harassment, and Plaintiff has specifically disavowed making any such claim in this lawsuit.

[5] *See Spanel v. Cent. Cmty. Coll.*, 2021 WL 5907930, at 3 (D. Neb. Dec. 14, 2021) (denying plaintiff's motion to compel counsel's legal advice; no waiver where the college's *Ellerth-Faragher* defense was "grounded in CCC's policies, Plaintiff's awareness of those policies, and Plaintiff's refusal to cooperate with CCC's attempt to address her one complaint."); *Booker v. Express Scripts, Inc.*, 2010 WL 11545956, at 3 (W.D. Ky. Feb. 11, 2010) (no waiver of work product protection where the plaintiff "was no longer an employee of [the defendant] when the investigation was conducted").

defense, the waiver is limited to *documents* regarding the investigation, *e.g.*, *McKenna v. Nestle Purina PetCare Co.*, 2007 WL 433291, at 4 (emphasis added: "These cases make clear, however, that *the waiver extends only to documents which constitute evidence of the investigation* of the claim of harassment or discrimination."), and Stone's notes of the preliminary investigation have been provided to Plaintiff.

Finally, in a bizarre footnote, Plaintiff contends that the college waived privilege attaching to the communications during the meeting simply because Stone was present and the General Counsel was her supervisor. ECF 60, p. 9 n. 2. Plaintiff understandably cites no authority to support her novel proposition, as it is contrary to applicable law. *See, e.g.*, *McCook Metals L.L.C. v. Alcoa, Inc.*, 192 F.R.D 242, 254 (N.D. Ill. Mar. 2, 2000) ("Management should be able to discuss among themselves the legal advice given to them as agents of the corporation with an expectation of privilege."); *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 1996 WL 341537, at 4 (N.D. Ill. June 20, 1996) ("A privileged communication does not lose its status as such when an executive relays legal advice to another who shares responsibility for the subject matter underlying the consultation. Management personnel should be able to discuss the legal advice rendered to them as agents of the corporation.").

### IV.

### DEFENDANT SEEKS A PROTECTIVE ORDER, NOT SANCTIONS.

Plaintiff's *Response* seems to infer that references in Defendant's motion and brief to applicable *Disciplinary Rules of Professional Conduct* are for the purpose of seeking sanctions. ECF 60, p. 1 ("modus operandi), and pp. 11-13. They are not. Rather, those references and the numerous cases cited by Defendant interpreting those rules support the "good cause" necessary for issuance of a protective order. Moreover, Plaintiff's *Response* misconstrues those citations and arguments.

First, Plaintiff contends the reference in Defendant's brief (ECF 59, p. 6,

**7**

n. 2) to DR 4.02(a) is "strange" because the rule is inapplicable to former employees, *i.e.*, Stone. Plaintiff's assertion wholly misperceives Defendant's citation to that DR. The citation in footnote 2 of Defendant's brief had nothing whatsoever to do with Plaintiff's counsel's *ex parte* communications with Stone *after she retired from the college*. As explained in Defendant's brief, DR 4.02(a) was cited in reference to *Plaintiff's* communications:

- with Stone in October 2021 (*when Stone was still an employee* of the college) *after* Plaintiff had hired her lawyer in September;
- and her communications with Paul Williams, the Assistant Director of Human Resources, also in October 2021, *after* Plaintiff had hired her lawyer;
- for the purpose of obtaining information from Stone and Williams regarding investigation of Plaintiff's complaint and results of the investigation;
- even though Plaintiff was represented by counsel and knew at the time of the communications that the matter had been referred to the General Counsel of the college.

Communications to elicit such information in October 2021 should have been directed to the General Counsel.[6]

Second, Plaintiff argues at length that there is nothing improper about having *ex parte* communications with Stone after she resigned from the college. That is a straw man contention because Defendant's motion and brief do not contend that *ex parte* communications with a former employee are *per se* improper. Defendant's contention—one which Plaintiff fails to address in her *Response*—is that during any such *ex parte* communications with a former employee an attorney is prohibited *from inquiring into privileged communications*

---

[6] It is unknown whether Plaintiff's communications with Stone and Williams in October 2021 were made on the advice or with the encouragement of her attorney.

8

with the former employee. *E.g.*, *Butler v. Exxon Mobil Ref. & Supply Co.*, 2008 WL 11351509, at 4 (M.D. La. July 22, 2008) ("In the course of the interview, plaintiffs' counsel shall not attempt to solicit privileged or confidential information and shall terminate the conversation should it appear that the interviewee may reveal privileged or confidential matters."); *Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp., Inc.*, 1998 WL 186705, at 6 (E.D. La. Apr. 17, 1998) ("[P]laintiffs' counsel must instruct [the former employees] must not discuss with or produce to plaintiffs or their counsel, consultants, agents or other representatives any information that is trial preparation material or is conceivably protected by the attorney/client privilege[.]"); *In Matter of Torch, Inc.*, 1996 WL 185765, at 3 (E.D. La. Apr. 16, 1996) ("[A]n attorney can investigate the underlying facts leading up to the disputed matter, but he must forgo inquiry into attorney-client communication during the contact."). Neither Plaintiff's *Response* nor *Appendix* state that the *ex parte* communications with Stone were limited to non-privileged matters, or that there was no discussion regarding Stone's privileged communications with the General Counsel. An attorney is prohibited from inquiring into privileged communications whether during *ex parte* communications or a deposition. *See Amarin Plastics, Inc. v. Maryland Cup Corp.,* 116 F.R.D. 36, 42 (D. Mass. 1987).

## **CONCLUSIONS AND REQUESTED RELIEF**

For all of the foregoing reasons, the motion should be, in all things, **GRANTED**.[7]

Respectfully Submitted,

*/s/ John L. Ross*
**JOHN L. ROSS**
Texas State Bar No. 17303020
**THOMPSON, COE, COUSINS & IRONS, L.L.P.**
700 North Pearl Street
Suite 2500
Dallas, Texas 75201
Telephone: (214) 871-8206
Fax: (214) 871-8209
Email: jross@thompsoncoe.com

**ATTORNEYS FOR DEFENDANT**

## **CERTIFICATE OF SERVICE**

Pursuant to *Fed. R. Civ. P.* 5(b)(2)(E) and 5(b)(3), I hereby certify a true and correct copy of the foregoing document was filed electronically and notice of the filing was thereby given to Plaintiff's counsel on the date file-stamped by the Clerk. Parties may access this filing through the court's electronic filing system.

*/s/ John L. Ross*
**JOHN L. ROSS**

---

[7] Defendant has previously submitted a proposed order detailing the specific relief requested.

**10**