UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**SHELLY GIPSON,**

   Plaintiff,

v.                               **No. 4:22-cv-0730-P**

**WEATHERFORD COLLEGE,**

   Defendant.

## OPINION & ORDER ON REMAND

"The notion that counsel should have put himself at risk to find a notary [during inclement weather] is simply wrong." *Gipson v. Weatherford College*, 2023 WL 7314355, at 3 n.3 (5th Cir. Nov. 6, 2023). This Court agrees. This Court would never knowingly put any counsel or party before it at risk for their safety to comply with one of its orders. But clairvoyance is not a power vested in the judiciary under Article III of the Constitution, and a district court can only act on the information provided by the attorneys practicing before it. Now before the Court is a matter that has taken up a significant amount of time and resources from this Court and the Fifth Circuit and could have been easily avoided if counsel for Defendant had simply provided the Court with more information.

### BACKGROUND

The underlying litigation in the case was rife with contention and inflammatory rhetoric that is rarely seen in the Fort Worth Division of the Northern District of Texas.[1] Indeed, although this case was only

---

[1] As the long-respected Fort Worth Judge Eldon B. Mahon recognized after three decades on this bench, "name-calling and personal attacks . . . do little to advance a party's position and only serve to cloud the real issues before the Court." *U.S. Fleet Servs. v. City of Fort Worth*, 141 F. Supp. 2d 631, 633–34 (N.D. Tex. 2001) (Mahon, J.).

active for about seven months, there were no fewer than **five** separate discovery disputes between the parties during that time.[2] ECF Nos. 32, 33, 42, 47, 59. Defendant's attorney, Mr. John Ross, was almost exclusively responsible for initiating these disputes. The Court ordered the disputes referred to a magistrate judge for determination or the parties to confer to try to resolve the matters without the intervention of the Court. On December 15, 2022—after their fourth discovery dispute—the Court was required to enter an order gently reminding counsel of their obligations under *Dondi Properties Corp. v. Commerce Savings & Loan Assoc.*, 121 F.R.D. 284, 293 (N.D. Tex. 1988) ("[Parties] should make reasonable efforts to conduct all discovery by agreement."). ECF No. 50. Despite this admonishment, a mere six weeks later, Mr. Ross filed another motion for protective order because the parties could not agree over basic deposition procedure. ECF No. 59.

Over 400 hundred years ago, Sir Francis Bacon admonished judges to be on guard to prevent lawyers engaging in "nimble and sinister tricks and shifts, whereby they pervert the plain and direct courses of courts, and bring justice into oblique lines and labyrinths." Sir Francis Bacon, *Essay "Of Judicature," in* HANDBOOK FOR JUDGES 28 (Donald K. Carroll ed.). Bearing this admonition in mind, the Court issued its "*Dondi* Order" on January 31, 2023—central to Ross's appeal—which required that counsel simply reread *Dondi*, the Texas Lawyer's Creed, and the Texas Rules of Professional Responsibility, certifying via an affidavit that they had done so by February 3, 2023. ECF No. 63. No more than one hour and fifteen minutes later, Mr. Ross filed a declaration that he had done so—despite the Court's order requiring an affidavit. ECF No. 65. The next day, the Court struck and unfiled Ross's declaration as well as Plaintiff's counsel's declaration for failure to comply with the Court's

---

[2] At one point, the parties could not even agree on deposition locations and times for key defense witnesses, requiring the Court to order the parties to meet and confer in-person in its own jury room—twice. ECF Nos. 50, 69. The undersigned can attest that, in his thousands of cases as a state trial and appellate judge and federal judge, he cannot recall being required to order counsel to meet and confer at the courthouse to discuss basic deposition decorum.

2

Order. ECF Nos. 64, 65. The Court then imposed a small financial sanction of $250.00 against both sides. ECF No. 66. Mr. Ross ultimately complied with the Court's Order, paid the sanction, and filed the requisite affidavit on February 3. ECF No. 70. In a notice attached to the affidavit, Mr. Ross asserted for the first time that inclement weather prevented his securing a notary on January 31, even though the affidavit was not due until February 3. ECF No. 70. Mr. Ross did not ask the Court to reconsider the $250.00 sanction and the case was settled and dismissed on April 6, 2023.

Only Mr. Ross appealed the Court's bilateral sanction.[3]

## ANALYSIS

This Court understands and has long treated declarations equal to affidavits under 28 U.S.C. § 1746, consistent with the law and circuit precedent. But the importance of oaths—taken before those legally authorized to administer them—cannot be overstated, especially when it comes to ensuring compliance with codes of professional conduct. Indeed, "[oaths] contain[] a formal calling upon God; an affirmation is merely a statement that one will tell the truth." 4 HANDBOOK OF FED. EVID. § 603:1 n.1 (9th ed.). In forming his militia, George Washington instructed his officials to ensure that recruits took "oaths" of allegiance, which often carried punishments if one failed to comply with his or her oath. *See* Ian Gallacher, *"Swear Not at All": Time to Abandon the Testimonial Oath*, 52 NEW ENGLAND L. REV. 247, 265–66 (2018).[4]

---

[3] Although the Court is perplexed by counsel's reasoning or its relevancy, in his brief to the Fifth Circuit, Mr. Ross took the opportunity to provide the court of appeals with citations to every case in which he has appeared in the Texas federal courts over 35 years, and also attempted to slight this Court by informing the court of appeals that he was first "first licensed in Michigan in 1976—the year after the District Court was born." *See Gipson*, 2023 WL 7314355, Appellant's Br. at 15.

[4] The importance of oath-taking has been acknowledged through our history, from the oath of the president enshrined in Article II, Section 1, Clause 8 of the Constitution, to the oath of attorney to be admitted into the Northern District of Texas. *See* N.D. Tex. LR 83.2 & N. D. Tex. LCrR 57.7. Indeed, common law has long recognized that "testimony" in the context of a legal proceeding is fundamentally defined as "a statement made by a witness under oath." *Cauble v. Key*, 256 S.W. 654, 655 (Tex. Civ. App.—Austin 1923, no writ)

It is this gravitas of oath-taking that has been enshrined in the American judiciary since its inception, where courts have routinely punished those found to have made false oaths in judicial proceedings and to law enforcement officials. *See e.g.*, "Perjury," Va. Prac. Criminal Offenses & Defenses P15. Therefore, for almost a decade, the undersigned has required affidavits and oaths of its appearing attorneys in numerous contexts, not the least of which have been *Dondi* orders—the initial forms of which were crafted decades ago by the late Judge Eldon Mahon—aimed at ensuring a fair and expeditious judicial process and enforcing the (rightly) required standards of professional conduct by the members of its Bar. Similar *Dondi*-type orders requiring affidavits or oaths of compliance have been relied upon by state and federal judges in Tarrant County for decades.

The Court is left skeptical of the justification offered on appeal by Mr. Ross that treacherous weather required a declaration in this instance. Mr. Ross filed a non-compliant declaration a mere hour or so after the Court's mandate even though he had nearly four more days to secure a notary and file an affidavit. What's more, Mr. Ross ultimately complied with the terms of the *Dondi* Order by providing an affidavit after offering a perfectly legitimate reason for his failure to originally secure a notary—a reason for which the Court would have granted an extension or reconsideration—should he simply have requested it. Unfortunately, the cost of his appeal has now far outweighed the value of this Court's original sanction: monetarily, and in terms of Mr. Ross's time, this Court's time, his client's time, the time and effort of the Fifth Circuit's panel assigned his appeal. The Court can ill-afford to spend any more time exploring Mr. Ross's actions on remand.

The Court continues to believe in the solemnity of oaths taken before those authorized to administer and receive them, especially when it is used as a tool for this Court's exercise of its "inherent authority to manage [its] own affairs to achieve the orderly and expeditious

---

(citation omitted) ("[T]he administration of the oath by a competent officer is a fundamental and essential requirement to give testimony its binding force.").

disposition of cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630 (1962).[5] Thus, to avoid any misunderstanding of its orders in the future, the Court will require counsel to physically appear before the Court and swear that they have complied with its *Dondi* orders.

## CONCLUSION

Accordingly, as required by the instructions of the Fifth Circuit, the Order dated February 2, 2023 imposing sanctions on Mr. John Ross is **VACATED**. In light of the Fifth Circuit's Order and in fairness, the Court will also **VACATE** its February 2, 2023 Order imposing sanctions on counsel for Plaintiff, Mr. Kevin M. Duddlesten. The Clerk of the Court is **INSTRUCTED** to refund Mr. Ross his $250.00 sanction and Mr. Duddlesten his $250.00 sanction imposed by the Order.

**SO ORDERED** on this **11th day** of **December 2023.**

MARK T. PITTMAN
UNITED STATES DISTRICT JUDGE

---

[5]"The judge sets the standards of practice in his court. He can countenance a low standard of lawyer conduct generally or he can require a high standard of lawyer conduct. . . . Unless the judge requires a high standard of all who practice before him, the best will be forced down to the level of the worst in order to compete on equal terms." Arch M. Cantrall, *The Judge as a Leader: The Embodiment of the Ideal of Justice,*" in HANDBOOK FOR JUDGES 59 (Donald K. Carroll ed.).